UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Malique McKinstry<br><br>v.<br><br>Kelley Elizabeth Flesher and Neal James Flesher | CASE NO. 2:24-CV-00638 |

**PROPOSED ORDER**

**AND NOW**, this ____ day of _____ 2024, upon consideration of Defendants Kelley Elizabeth Flesher and Neal James Flesher's Motion to Preclude the Testimony of Plaintiff's Medical Expert, Dr. Lance Yarus, pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., and any response thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED.

It is **FURTHER ORDERED** that Dr. Yarus is precluded from testifying at the trial of this matter, and that his report may not be introduced into evidence for any reason or purpose.

BY THE COURT:

_____
, J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Malique McKinstry<br><br>v.<br><br>Kelley Elizabeth Flesher and Neal James Flesher | CASE NO. 2:24-CV-00638 |

**DEFENDANTS' KELLEY ELIZABETH FLESHER AND NEAL JAMES FLESHER'S MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S MEDICAL EXPERT, DR. LANCE YARUS PURSUANT TO**
*DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.*

Defendants, Kelley Elizabeth Flesher and Neal James Flesher, hereby move this Court for an Order precluding Plaintiff, Malique McKinstry's medical expert witness, Dr. Lance Yarus, from testifying at the time of trial. In support thereof, Moving Defendants rely upon its Memorandum of Law with attached exhibits, filed herewith. As set forth in Moving Defendants' Memorandum of Law, the conclusions of Dr. Yarus are not based on sufficient facts or data and are not the product of reliable principles and methods and, therefore, are not admissible.

LAW OFFICES OF FRANCIS D. MACKIN

Dated: August 6, 2024    By: _____
Jonathan R. Auth
Attorney for Defendants,
Kelley Elizabeth Flesher and Neal James Flesher
Attorney Identification No. 306852
525 Route 73 North, Suite 216
Marlton, NJ 08053
Jonathan.Auth@usaa.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Malique McKinstry<br><br>v.<br><br>Kelley Elizabeth Flesher and Neal James Flesher | CASE NO. 2:24-CV-00638 |

**DEFENDANTS' KELLEY ELIZABETH FLESHER AND NEAL JAMES FLESHER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S MEDICAL EXPERT, DR. LANCE YARUS PURSUANT TO <u>DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.</u>**

### STATEMENT OF FACTS

This matter arises from a motor vehicle accident that occurred on April 30, 2023. The Plaintiff was a passenger in a car that was operated by Photoson Hoff. Plaintiff's Complaint alleges that he "suffered various serious and permanent personal injuries, serious impairment of bodily function and/or permanent serious disfigurement and/or aggravation of pre-existing conditions, including neck pain." A copy of plaintiff's complaint is attached as **Exhibit A**.

Several hours following the accident, the Plaintiff reported to the ER with complaints of neck pain and a headache. The Plaintiff testified that at the ER he was offered to have an x-ray performed and offered a neck brace, but he refused both. He received an icepack for his neck, was diagnosed with a cervical strain and facial abrasions, and was discharged to home. He received no stitches. The Plaintiff was instructed to follow-up with his primary care physician.

Instead, plaintiff contacted an attorney who orchestrated the rest of his medical care. Plaintiff had one office visit with Dr. Eric Rosin, D.O., a physiatrist, received chiropractic treatment at Weinerman Pain and Wellness from May 11, 2023 to November 27, 2023, and underwent MRIs of his cervical and thoracic spines.

Plaintiff has retained Lance Yarus, D.O. as his medical expert and his report was served on defense counsel on March 28, 2024. A copy of Dr. Yarus's October 23, 2023 report is attached as **Exhibit B**. Dr. Yarus stated that the following injuries occurred as a result of the April 30, 2023 accident:

> 1. Cervical strain and sprain, cervical myositis, somatic and segmental dysfunction, cervical spine, enthesopathy, cervical spine.
> 2. C2-C3 disc bulge/protrusion, extrusion-type herniation with left eccentricity.
> 3. Cervical facetogenic pain mediated by C3-C4, C4-C5, C5-C6 injured in the subject incident of April 30, 2023.
> 4. Thoracic strain and sprain, thoracic myositis, segmental and somatic dysfunction, thoracic spine, enthesopathy, thoracic spine.
> 5. Chronic pain secondary to subject incident-related injuries sustained on April 30, 2023.
> 6. Alteration of activities secondary to subject incident-related injuries sustained on April 30, 2023.

Dr. Yarus states in his report that the "[p]rognosis for this individual is poor." Dr. Yarus indicates that the injuries sustained are "permanent and highly susceptible to re-injury, recurrence and/or aggravation of any underlying conditions." Furthermore, Dr. Yarus states that "the prognosis is designated *anticipating* the consequences and effects of the sustained injuries in terms of disruption of activities of daily living, discomfort, residual pain, the need for further conservative and/or interventional treatments, and consideration of surgery." See **Exhibit B**.

Dr. Yarus then goes on for five pages describing various care that plaintiff *will* require in the future. Dr. Yarus states that his opinions "in regard to future care, including evaluations and treatments, *are given to a reasonable degree of medical probability*." See **Exhibit B**.

Dr. Yarus's report discusses multiple types of treatment that plaintiff *could* undergo, which includes conservative treatment, minimally invasive procedures, and surgical intervention. However, he failed to state which, if any, procedures or surgeries were required or recommended to Plaintiff. See **Exhibit B**.

Dr. Yarus neglects to identify any scientific principles or methods he employs in reaching his conclusions regarding which future treatment plaintiff would need. Instead, he just lists multiple types of treatment that plaintiff could undergo without any explanation as to why and when plaintiff would need the future treatment.

Plaintiff was deposed on June 24, 2024, approximately seven months after he saw Dr. Yarus. Plaintiff testified that he reported to the emergency room the night of the accident and that he was treated then released. See plaintiff's deposition transcript at pp. 48:5-10 and 52:6-11 attached as **Exhibit C**.

Plaintiff testified that he saw Dr. Rosin a week or two after the accident. Dr. Rosin performed physical exam of plaintiff's neck. Plaintiff stated that Dr. Rosin did not tell him that there was anything wrong with his neck and that Dr. Rosin did not refer him for any testing, nor did Dr. Rosin prescribe any medication. Plaintiff testified that he only saw Dr. Rosin one time. See **Exhibit C** at pp. 54:5-9, 56:1-5, 56:25-57:3, and 58:2-19.

Approximately a month later, at the recommendation of his attorney, plaintiff sought treatment at Weinerman Pain and Wellness. Plaintiff told Dr. Weinerman that he had pain in his neck, bruising on his legs and scarring on his head. See **Exhibit C** at pp. 58:25-59:7, 59:22-61:4. Plaintiff treated at Weinerman Pain and Wellness for about six months. Plaintiff's treatment at Weinerman Pain and Wellness consisted of conservative therapeutic modalities. Plaintiff was never given any prescriptions for medication. Plaintiff was referred for an MRI. See **Exhibit C** at pp. 62:6-11, 62:14-63:2, 64:12-21. Plaintiff underwent the MRIs. He stated that the doctor told him that he had a "problem that could be fixed" in his neck, and the doctor gave him exercises to complete. See **Exhibit C** at pp. 66:6-67:9.

Plaintiff underwent MRIs of his cervical and thoracic spine on June 29, 2023. The radiologist stated that Plaintiff's cervical MRI showed a "shallow disc bulging to the left at C2-C3 of ***uncertain significance***." The radiologist further stated that the MRI was "otherwise essentially negative exam." The radiologist stated that plaintiff's thoracic MRI was "essentially negative exam." See **Exhibit D**. In effect, the Plaintiff had two MRIs which from which the reading radiologist can find either no injuries at all, or a possible condition of "uncertain significance."

<u>Plaintiff testified that he was never told that he needed surgery or injections relating to his injuries from the motor vehicle accident. He further testified that he has no intention of having surgery with regard to his injuries. Plaintiff testified that it was his attorney who stated that he could have gotten injections. Plaintiff further testified that he felt that he did not need injections and that he has no intention of getting any injections or surgery.</u> See **Exhibit C** at p. 67:10-68:10. <u>Plaintiff testified that he has no intention of seeing any other doctors, medical professionals, or getting any other medical care in the future for the accident.</u> See **Exhibit C** at p. 68:11-15.

<u>Plaintiff testified that he was referred to Dr. Yarus in October 2023 by his attorney.</u> See **Exhibit C** at p. 69:2-11. <u>Plaintiff testified that Dr. Yarus did not tell him about any future medical treatment or medical care that he may need, but that Dr. Yarus did reiterate what the attorney said about the injections.</u> See **Exhibit C** at p. 70:17-71:1.

Lastly, plaintiff testified that the accident affected his life ***at the time of the accident*** [i.e. April 30, 2023], but that he feels better now. He stated that some days he gets sharp pains in his neck some days, mentions that his legs hurt, but other than that he's "fine." See plaintiff's deposition transcript at p. 74:2-21.

As discussed in greater detail below, with respect to the conclusions set forth in Dr. Yarus's report, his opinions are not based in any identifiable scientific principles or methodology. Instead, his blanket opinions are wholly speculative and are impermissible under applicable law.

## ARGUMENT

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court defined the District Court's gatekeeping role as requiring a determination as to whether an expert's testimony satisfies the general requirements of the Rules of Evidence. The District Court is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Third Circuit has defined the requirements of Federal Rule of Evidence 702 under <u>Daubert</u> as a "trilogy" requirement: qualification, reliability, and fit. <u>Calhoun v. Yamaha Motor Corp.</u>, 350 F.3d 316, 321 (3d. Cir. 2003). "First, the witness must be qualified to testify as an expert." <u>Id.</u> at 321. Second, the evidence that it is reliable. <u>Id.</u> at 321. "In other words, 'the expert's opinion must be based on the methods and procedures of science rather than on subject belief or

unsupported speculation; the expert must have good grounds for his or her belief.'" Id. at 321 (quoting Daubert, 509 U.S. at 590). "An assessment of the 'reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Id. at 321 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.2d 717, 743). Finally, "the expert testimony must 'fit,' meaning the 'expert's testimony must be relevant for the purposes of the case and assist the trier of fact.'" Id. at 321. (quoting Schneider v. Friend, 320 F.3d 396, 405 (3d. Cir. 2003)).

Accordingly, not all opinions that happen to be held by an expert are "expert opinions." See United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991). "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert. See United States v. Lundy, 809 F.2d 392, 395-96 (7th Cir. 1987); cf. Mid-State Fertilizer v. Exchange Nat'l Bank, 877 F.2d 1333, 1340 (7th Cir. 1989) (rejecting an economist's "expert" opinion that drew on inferences from the record rather than any economic expertise)." Id. at 604.

Under Daubert, the trial judge must ensure under the Rules that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert further states that the "subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." Daubert at 589-590.

"Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that

there is simply too great an analytical gap between the data and the opinion proffered." GE v. Joiner, 522 U.S. 136, 146 (1997).

"[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory. '*[W]ithout more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.*'." Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir. 2007) *citing* Viterbo v. Dow Chem. Co., 826 F.2d 420, 424 (5th Cir. 1987). (Emphasis added).

"If Daubert and its progeny require anything, it is that plaintiffs come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." Pappas v. Sony Elecs., Inc., 136 F.Supp.2d 413, 426 (W.D. Pa. 2000).

Dr. Yarus's opinions are not reliable. His opinion merely cites a "cause and effect relationship" between the accident and Plaintiff's alleged injury. There is no scientific basis identified which establishes Dr. Yarus's opinion regarding causation nor a basis for Dr. Yarus's recommendations of further treatment. Dr. Yarus offers a broad list of future invasive treatments that plaintiff could potentially undergo at some unknown time in the future. His recommendations contradict the opinions of physicians who have provided treatment to plaintiff. Furthermore, Dr. Yarus's recommendation of further treatment contradicts the Plaintiff's own clear intentions regarding not undergoing future invasive procedures. See Exhibit C. It is clear that his report is not only pure speculation but his conclusions are contradicted by plaintiff's deposition testimony.

Lastly, several courts have found Dr. Yarus's techniques and opinions to be "nothing short of suspect" and "unreliable." See Wooley v. Smith & Nephew Richard, Inc., 67 F. Supp. 2d 703. Further, Dr. Yarus's testimony has been found to stem "solely from litigation" and "influenced by a litigation-driven financial incentive." See Leigh v. Danek Med., 1998 U.S. Dist. LEXIS 21037

& Edgar v. Danek Med., 1999 U.S. Dist. LEXIS 6431.  Dr. Yarus is regularly precluded from providing his suspect and unreliable opinions.  See Crump v. Sokolow, 1750 EDA 2022.

Dr. Yarus's conclusions are often found to not have proper grounding in valid scientific methodology and be deemed speculative under Daubert.  *See* Moses v. Danek Med., Inc., 1998 U.S. Dist. LEXIS 21110 (1998); McCollin v. Synthes, 50 F. Supp. 2d 1119, 1125-1129 (D. Utah 1999); Hartwell v. Danek Med., Inc., 47 F. Supp. 2d 703 (W.D. Va. 1999); Parks v. Danek Med., Inc., 1999 U.S. Dist. LEXIS 18662 (N.D. Ind. 1999); Johnson v. Smith & Nephew Richards, Inc., 1999 U.S. Dist. LEXIS 19123 (N.D. Okla. 1999).

The sources and Opinions cited above are specifically about Dr. Yarus, his particular methods, and his conclusions.  Dr. Yarus is a well-known commodity to this Court and to Plaintiff's counsel.

The conclusions of Dr. Yarus are not based on sufficient facts or data, and are not the product of reliable principles and methods and, therefore, are not reliable. Furthermore, Dr. Yarus and his opinions have repeatedly been called into question by various Courts.

Because these conclusions do not satisfy the requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), as well as its progeny, Dr. Yarus should be precluded from testifying at trial.

**CONCLUSION**

  Dr. Lance Yarus should not be permitted to offer testimony in this matter for the reasons stated above. Defendants, Kelley Elizabeth Flesher and Neal James Fleshers respectfully request the Court to enter an Order to preclude testimony of plaintiff's expert, Dr. Lance Yarus.

                **LAW OFFICES OF FRANCIS D. MACKIN**

Dated: August 6, 2024      By: _____
                Jonathan R. Auth
                Attorney for Defendants,
                Kelley Elizabeth Flesher and Neal James Flesher
                Attorney Identification No. 306852
                525 Route 73 North, Suite 216
                Marlton, NJ 08053
                856-988-7444
                Jonathan.Auth@usaa.com